J-S09018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: I.S.C.P. A/K/A I.C.P., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.A.P. A/K/A D.P., MOTHER | : : : : : : : | No. 3125 EDA 2016 |

Appeal from the Order August 8, 2016
in the Court of Common Pleas of Bucks County
Civil Division at No:  No. 2016-9060

BEFORE:   SHOGAN, STABILE, and PLATT[*]

MEMORANDUM BY STABILE, J.:                **FILED FEBRUARY 23, 2017**

D.A.P. a/k/a D.P. ("Mother") appeals from the decree entered on August 16, 2016, in the Court of Common Pleas of Bucks County, involuntarily terminating her parental rights to her daughter, I.S.C.P. a/k/a I.C.P. ("Child"), born in August of 2013.  Counsel for Mother has filed also with this Court both a petition for leave to withdraw as counsel and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967) and its progeny. We affirm, and grant counsel's petition to withdraw.[1]

The trial court set forth the following factual and procedural history.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] By separate decree entered on August 16, 2016, the trial court involuntarily terminated the parental rights of R.C. ("Father").  He did not file a notice of appeal.

> Child's drug test [at birth] was positive for unprescribed medication, oxycodone, which prompted the Agency [Bucks County Children and Youth Social Services Agency] to implement a Safety Plan regarding Mother. The Safety Plan provided that Mother was not to be alone with Child in an unsupervised setting.
>
> Following ongoing concerns, an Emergency Order was sought in Dependency Court, and on August 7, 2014, Child was placed in the legal and physical custody of the Agency. A subsequent Shelter Care Order was entered on August 11, 2014. Approximately six (6) weeks later, Child was adjudicated dependent. On May 4, 2016, the Agency filed a Petition to Terminate Parental Rights as to Mother and Father pursuant to 23 Pa.C.S. § 2511(a)(2), (5), and (8).

Trial Court Opinion, 9/21/16, at 1-2 (citations to record omitted) (footnote omitted).

The trial court held a hearing on August 8, 2016, during which the Agency presented the testimony of its caseworker, Ashley Lorenz. Mother did not personally appear for the hearing, but she was represented by court-appointed counsel.

By decree dated August 8, 2016, and entered on August 16, 2016, the trial court involuntarily terminated Mother's parental rights. Mother timely filed a notice of appeal on September 6, 2016. On that same date, Mother's counsel filed a statement of intent to file an **Anders** brief in lieu of a statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(c)(4). **See In re J.T.**, 983 A.2d 771, 774 (Pa. Super. 2009) (holding that decision of counsel to follow Rule 1925(c)(4) procedure in a termination of parental rights case was proper). On

September 21, 2016, the trial court filed its opinion pursuant to Rule 1925(a).

On November 16, 2016, Mother's counsel filed a petition with this Court requesting to withdraw from representation and submitted a brief pursuant to *Anders*, *supra*. We address counsel's *Anders* brief at the outset. *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (quoting *Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa. Super. 1997)). In *In re V.E.*, 611 A.2d 1267 (Pa. Super. 1992), this Court extended the *Anders* principles to appeals involving the termination of parental rights. To withdraw pursuant to *Anders*, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy

of the letter sent to their client advising him or her of their rights."

***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an ***Anders*** brief must comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009).

Instantly, counsel filed a petition to withdraw certifying that she had reviewed the case and determined that Mother's appeal was frivolous. Counsel also filed a brief that includes a summary of the history and facts of the case, the issue raised by Mother, the facts that arguably support the appeal, and counsel's assessment of why the appeal is frivolous with citations to relevant legal authority. Counsel attached to her petition to withdraw a copy of the letter to Mother advising her that she could obtain new counsel or raise additional issues *pro se*. Accordingly, counsel complied with the requirements of ***Anders*** and ***Santiago***.

We next proceed to review the issue outlined in the **Anders** brief. In addition, we must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted). Counsel's **Anders** brief raises the following issue for our review:

> 1. Did the trial court commit an error of law and abuse of discretion by involuntarily terminating [Mother's] parental rights?

**Anders** Brief at 2. The Agency counters that it established by clear and convincing evidence the statutory grounds to terminate Mother's parental rights and that severing Mother's rights would serve Child's best interest.[2]

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

**In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

---

[2] Similarly, the guardian *ad litem* filed a brief in support of the decree involuntarily terminating Mother's parental rights.

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we conclude that the certified record sustains the trial court's decision to terminate under Sections 2511(a)(2) and (b), which provide as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the

incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

This Court has stated as follows:

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted)). Further, we have stated, "[t]he grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

With respect to Section 2511(b), this Court has stated that, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id*. (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

In this matter, the Agency established the following Family Service Plan ("FSP") objectives for Mother, in part: complete a substance abuse evaluation and follow through with all recommendations; maintain suitable housing; obtain a mental health evaluation and follow through with all recommendations; and visit with Child regularly. N.T., 8/8/16, at 12-13.

The trial court found that Mother has not successfully completed any of the recommended substance abuse or mental health treatment programs. In addition, the trial court found that Mother has not maintained suitable housing. Specifically, the trial court found that Mother "was a resident of Section 8 housing but was terminated from that program in 2014. In 2015, Mother was living in a Red Cross Shelter; however, she lost her opportunity

to continue to reside there due to her violations of the shelter's rules." *Id.* at 6 (citations to record omitted). In addition, the trial court found that Mother "was selected for a supportive housing opportunity. However, to be the recipient of such housing[,] Mother was required to have custody of Child. Mother remains, then, without stable housing." *Id.*

Moreover, the trial court found that "throughout the history of the Agency's involvement, Mother has been inconsistent with her visits with Child." *Id.* at 6 (citations to record omitted). Specifically, the trial court found as follows:

> At the time of the August [8], 2016 hearing, Mother had not visited with Child since February 2016. In October 2015, visits by Mother at the foster mother's home were discontinued due to Mother's threats directed toward the foster mother. And, at one point, Mother's visits with Child were suspended. [ ] Mother was unsuccessfully discharged from several parenting programs, which programs were incorporated into and partially dependent upon her visitation with Child.

*Id.* at 6-7 (citations to record omitted).

Upon careful review, the testimony of the Agency's caseworker, Ashley Lorenz, supports the foregoing findings of the trial court. Indeed, Ms. Lorenz's testimony demonstrates that Mother's repeated and continued incapacity, neglect, or refusal to successfully complete her FSP objectives of substance abuse and mental health treatment programs, housing, and visitation has caused Child to be without essential parental care, control, or subsistence necessary for her physical or mental well-being. Further, the causes of Mother's incapacity, neglect, or refusal cannot or will not be

remedied. As such, we discern no abuse of discretion by the trial court in terminating Mother's parental rights pursuant to Section 2511(a)(2).

With respect to Section 2511(b), this Court has explained as follows:

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. *In re K.K.R.S.*, 958 A.2d 529, 533-536 (Pa. Super. 2008). The mere existence of an emotional bond does not preclude the termination of parental rights. *See In re T.D.*, 949 A.2d 910 (Pa. Super. 2008) (trial court's decision to terminate parents' parental rights was affirmed where court balanced strong emotional bond against parents' inability to serve needs of child). Rather, the orphans' court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). As we explained in *In re A.S.*, 11 A.3d 473, 483 (Pa. Super. 2010),

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011).

Our Supreme Court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d at 268. The Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. The *T.S.M.*

- 10 -

Court observed that, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

Instantly, the trial court found as follows:

[T]he record is devoid of testimony or evidence of a beneficial relationship between Mother and Child, the existence of which would result in a negative effect on Child should Mother's rights be terminated. The record contains clear and convincing evidence that Mother has not made strides toward adequately parenting Child. The evidence suggests, unfortunately, that Mother has repeatedly failed to pursue the avenues that were open to her for assistance through the Agency. Child is deserving of consistent affection and consistent attention to her needs and welfare, along with permanence and stability. Child's life cannot continue to remain on hold indefinitely, in hopes that Mother will one day be able to act responsibly and consistently as her parent.

*Id.* at 9-10 (citations omitted).

Further, the trial court found that Child shares a parent-child bond with her foster mother, with whom she has resided since birth.[3] Trial Court Opinion, 9/21/16, at 8. The trial court also found that Child is thriving in her foster placement, and that "Ms. Lorenz testified that Child is developmentally ahead of her age-appropriate benchmarks." *Id.* at 8-9 (citation to record omitted). In addition, Ms. Lorenz testified that Child's foster mother is a

_____

[3] Ms. Lorenz testified that, at an unspecified time, Child was in another foster home, but she implied that it was for a brief amount of time. N.T., 8/8/16, at 16; Trial Court Opinion, 9/21/16, at 8.

pre-adoptive resource. N.T., 8/8/16, at 17. Upon careful review of the testimonial evidence, we discern no abuse of discretion by the trial court in concluding that terminating Mother's parental rights will serve Child's developmental, physical, and emotional needs and welfare.

Finally, our independent review of the certified record reveals no preserved non-frivolous issue that would arguably support this appeal. Therefore, we grant counsel's petition to withdraw and affirm the decree terminating Mother's parental rights pursuant to Section 2511(a)(2) and (b).

Petition of Jennifer E. Pierce, Esquire, to withdraw from representation is granted. Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/23/2017